Good morning, Ms. Bugney, and I think we're going to have Ms. Rumbleau by audio only. Are you there? I am. Good morning. Good morning. I'm sorry we can't see you, but we can hear you loud and clear, so let's proceed. Go ahead, Mr. Rumbleau. Thank you, Your Honor. When Judge Conley took the bench at sentencing, he had watched Stamps' confession. It was a little over a half hour long, and reflecting upon it, Judge Conley noted he was impressed with Stamps' candor, and in that statement, Stamps was clear. I have a small drug-dealing operation, about a dozen customers. I always meet them away from my house, and I don't carry a gun. I had the gun for personal protection after I was falsely accused of a murder. He made that statement the morning of his arrest. He made it before the case went federal and before the and why he did it. And not only did Judge Conley have that statement when he took the bench, he also had Stamps' affidavit, and there he provided further detail about his operation. Not even his supplier knew where he lived, and the gun was left in the house, and it only went there, sorry, it only left the house once. That is, just as this court called for in Fincher, the defense had presented affirmative evidence, evidence that was credible, evidence that the district court found credible, and that if weighed under the proper standard, would have entitled Stamps to safety valve relief, and with it likely a lower sentence. Unfortunately, the district court got confused in the standards, and that happens, and the remedy for that is having Judge Conley look at this evidence fresh, under the proper standard, and to make a finding. The government's harmless error argument isn't rooted in the record. Rather, it would rely upon a rule that no court has adopted, namely, that any time we have a drug dealing operation, and there's a gun, other than a hunting rifle, the defendant is ineligible for safety valve relief. But Fincher doesn't say that. In fact, no case holds that. It's contrary to the statute, and it's contrary to precedent. Instead, the safety valve finding is fact-intensive. It's one that we ask district courts to answer all the time. That's the person who we charge with making these decisions in the first instance. Judge Conley's watched the video. He's the one who has expertise. He's the one who, you know, time and time again makes these hard sentencing calls, and there's a reason why we want him to do that. It's because he's able to make that with fresh eyes. Now, the government is asking the court to make this in the first instance, to look at this and say, look, there's no way that Judge Conley could ever have found that this would have mattered, but that's contrary to the record. On remand, Judge Conley will again have that statement that he's watched and found credible. He'll have stamps affidavit, and he'll have all the facts before him. That's who should be making this decision in the first instance. I should also note that this decision about the harmless error now, or sorry, about the safety valve actually matters. This is a case where Judge Conley noted that but for the mandatory minimum, that is, a safety valve applied, he would probably have gone with a lower sentence. And I quote from the transcript, particularly if I account for his candor, talking about stamps, with the law enforcement and the fact that he has never spent any time in prison before, I might well, but for the statute, the mandatory minimum, have considered a lower sentence. That's in the appendix, page 12, page 6 of the transcript. So this is not a case where error would not have affected the outcome. This is a case the defense respectfully requests, where the district court should make a finding in the first instance, and that should be done on remand. How did this legal error creep in, Mr. Bugney? It strikes me as strange that the judge wouldn't have understood the difference between the two legal standards, the guidelines and the and the statute. And then there were efforts to try to rehabilitate, or what we would say, it was a witness as opposed to the judge to rehabilitate and get the right standard injected into the mix. But was it just the fog of the courtroom? What was going on? I mean, this was my take upon it all. I didn't handle the sentencing. But in knowing what happened as soon as my colleague came back from court, is that the probation department had doubled down on this is what Fincher means. And the district court had just sort of adopted that and didn't give the government time to speak, or the defense time to make an argument. And, and that's really what what happened here. You can see that in the PSR objections, we're very clear. You know, look, Fincher calls for a two step analysis. The prosecutor knew that. And then you get to court and we also submitted the video then and the judge looked at the video. But we get to court and the judge like, look, that's a misstatement of law. And you're like, no, that's not a misstatement. That's clearly what Fincher means. But as you can see, you're only getting particles of phrases out. It was sort of like appearing before Judge Posner at his peak, where you're answering only a quick question, and that's it. And so I think this is where, you know, Judge Conley should make this in this finding in the first instance, he'll have a remand court restating Fincher, we really mean it. There's two standards, one higher, one lower, and Mr. Stamps is only going for the lower one right now. Fincher had been issued at the time of sentencing, hadn't it? I'm sorry, Your Honor, you broke up. Fincher had been issued at the time of the sentencing in this case, hadn't it? That's correct, Your Honor. Our office handled Fincher, we cited it throughout. Yes, I think that was decided in July 2019. And this case was January 2020. So the error appears to have been injected by the probation office? Yes, Your Honor, yes. It's very clear they had adopted the error and then it just got doubled down. Judge Flom, any questions? I got your argument. Thank you, I appreciate it. As I usually do, Mr. Bugbee. I appreciate it. All right. Well, I'll rest and wait if there's any questions in rebuttal. Okay, thank you. Ms. Rumbelow. Good morning, Your Honors. May it please the court, Rita Rumbelow for the United States. Here, as Mr. Bugbee just pointed out, the district court did credit the defendant's statement that he had this loaded Glock 9mm pistol protect him because he was wrongly accused of a homicide. However, the district court correctly found that the firearm had a dual purpose. He also possessed this firearm to protect his drugs and his drug proceeds. Again, I just noted this was a loaded Glock 9mm pistol. It had one round in the chamber. Where did the district court make that specific finding as opposed to finding that the defendant hadn't met his burden of clearly improbable? I didn't see a specific finding by the district court that the firearm here had a dual purpose. No, well, it's implied in the record. I mean, the judge specifically said, I credit your statement like Mr. Bugbee said. He said, you know, I watched the video. I respect the defendant's candor. But then he also said it's not clearly improbable that this firearm was also not connected to your drug offense. But wouldn't you agree that that's a different standard than establishing by a preponderance of the evidence that the gun wasn't possessed in connection with the offense? Right. The problem for Mr. Stamps here in the government's view is when you look at Fincher, Fincher clearly stated you can't meet clearly improbable if you can't meet preponderance. Well, here the judge found that it was clearly improbable. So there's no way Mr. Stamps can meet the lower burden of preponderance, you know, because the judge held to the higher standard. How does that apply? You can't meet higher standards so you can't meet the lower? It's one thing to say if you can't meet the lower, you can't meet the higher. But to flip it and say if you can't meet the clearly improbable, you can't meet the preponderance doesn't make sense. Well, it makes sense to me. Because here again, you had a loaded firearm, 15 rounds in a magazine, tucked between the defendant's mattress with the drug proceeds $1,079 right next to the bed. And then this is a small apartment, just like in Fincher, it's a small apartment. And the over 50 grams of meth and a scale were in the course, the second bedroom of the apartment. So in Mr. Bugney's reply brief, he says the apartment was utterly unconnected to Stamps' drug dealing operation. And that is not what the facts support here. He could have, yes, had the gun for protection, and also to protect his drug proceeds. Because as the district court noted, because the defendant's vocation was drug distribution, that's why he was implicated in this homicide. That may be true. But Mr. Bugney's point is, that's not something that this court can determine from the record, that that's something that the district court should determine in the first instance, based on the record. Right. But in the statement of reasons, the court said, unfortunately, okay, there's nothing akin to the example in this case, the defendant candidly admitted to five-year history of drug dealing, maintaining over 50 grams of methamphetamine and trafficking materials. And the court just went on to state that keeping a loaded nine millimeter semi-automatic handgun under his mattress with a round in the chamber and a 15-round magazine inserted results in the inference that the gun serves to protect or embolden the criminal enterprise. And while the court credits the defendant's other reasons for keeping a gun in his apartment, the court is unable to find that it was not also connected to his dangerous vocation of drug distribution, much less that the connection was clearly improbable. That's why I referenced at the beginning of my argument that that's the dual purpose. The court said the gun can, he could attribute it to both things, but then finding it's not clearly improbable. So if you apply 2D1.1 enhancement, you don't get safety valve. You just don't get safety valve if you get the 2D1.1 enhancement. Didn't we say something different in Fincher that it's not, maybe you don't, but it's not automatic that you don't, because they're two different standards. No, because if you look at Title 18 United States Code Section 3553F, which has the limitation on applicability of the statutory minimums in certain cases, and you look at the subsections, it states you can't get safety valve, it's sub, sorry, one, two, the defendant, to get safety valve, the court has to make a finding that the defendant did not use violence or credible threats, okay, or possess a firearm or other dangerous weapon in connection with the offense. So here Judge Conley found that Mr. Stamps did possess a weapon in connection with the offense. So if the court finds the higher standard, which he did, I don't understand why a remand, because Judge Conley will say, no, that you can't, you didn't satisfy my preponderance, because I found you couldn't even satisfy my clearly improbable. That's the problem Mr. Stamps is facing here. I mean, it's in the statute. So the government believes, as stated in this brief, that the error here was completely harmless based on the facts of this case. The facts are overwhelming, and they're even more egregious than they were in Fincher. You're mixing up a factual argument and a legal argument. What I'm understanding you'd argue now is that as a matter of law, you can't get both. If the judge finds the higher standard, as a matter of law, the statutory safety valve is unavailable. And that's the opposite of what we said in Fincher. That's not how I read Fincher. Because the statute, again, 3553 F-1-2, the defendant cannot get safety valves if the judge finds that the dangerous weapon was possessed in connection with the offense. And that's what Judge Conley found here. And the facts truly support his finding. The drugs in the scale were in one room, and the proceeds in the loaded gun, that the 15-round magazine were in the other. Close proximity, not a hunting rifle in the closet, which the court discussed in Fincher. I think maybe there's a misunderstanding about how the guidelines, dangerous weapon enhancement actually works. The government makes the prima facie case that the gun was possessed in connection. But then that prima facie case can fall away, depending on when the burden shifts to the defendant. And the prima facie case doesn't translate over and conclusively resolve the safety valve question, which it sounds like what your argument is based on, if I'm understanding. Well, if I'm... So you're not making a factual argument, you're making a legal argument. Pardon me? You're not making a factual argument, you're making a legal argument. And you're not making an argument based on facts found by the district court. You're making an argument based on the judge's apparent legal understanding. What I'm trying to say, and forgive me if I'm really not making myself clear, the facts here support the judge's legal conclusion. Absolutely. The facts support it, the nature of the weapon, the presence of the drugs, the presence of the scale, the presence of the drug proceeds, all in close proximity. I mean, Mr. Stamps did receive a two-level enhancement for maintaining a drug dwelling under the guidelines, and they're not contesting that. I thought you were admitting, acknowledging the legal error, and all we have is a question of harmlessness here. Your argument is really shifting. No, I'm not meaning to, Your Honor, and I apologize for that. No, what I'm saying is Stamps cannot meet this burden by a preponderance. So any error of the district court is harmless. Well, you're conceding the error, right? Or are you backing off of that? Oh, yes. No, no. We did concede the error, Your Honor. Yes. In our brief, we conceded the error. Absolutely. There's a Fincher error here. There is. Our position is, based on the facts of this case, there's no way Mr. Stamps can satisfy the Fincher standard of preponderance, and that is supported in the government's view by the district court's finding of clearly improbable because Fincher states, well, you know what Fincher states, but I just, the judge found that this gun was possessed in connection with the drug offense. Therefore, the two-point enhancement applied under 2D1.1. Therefore, he's ineligible for safety valve. And we argue that his error in applying the Fincher standard was harmless because of the strong facts of this case. Okay. Thank you. I don't see anyone else signaling questions. So Mr. Bugney. Thank you, Your Honors. I would just stand on Fincher. I think the court can read Fincher and knows exactly what it decided. It's very clear that if you can't meet the higher standard, it doesn't mean that you can't meet the lower standard. And that lower standard, Judge Conley never actually ruled upon. We have a lot of facts in our favor. It's not like the Fincher case in a couple regards. One, the Fincher case was actually a stash house. It was a one bedroom, sparsely furnished. It was just meant to keep the drugs and you got a pistol there to, and it was right next to the drugs. Here, this is his primary place of living. And he's there with his girlfriend. It's a completely separate bedroom, far away from, you know, the drugs. And he doesn't use it for the drugs. He doesn't need to. Nobody knows where he lives. He has a very small operation. Fincher was not a small operation, a hundred grams of heroin and a significant, you know, two men living there. Was there evidence, Mr. Bugney, that the proceeds of the drug sales were in the same bedroom where the firearm was? No, this, yeah. Well, Rombolo said there was, I don't recall seeing that in the record. They never said that the $1,000 was actually from drug proceeds, but my client didn't actually have a job. So we don't know it was a tax return, but there there's no evidence that the thousand dollars was not his girlfriend's, but that by itself would not be dispositive. It would just be among the many facts that district court would consider. But here, especially given the fact that nobody knew where he lived, it's pretty strong evidence that he wouldn't need to use it to keep his drug dealing safe. It was really meant because of the Ricardo Sims murder that he'd been wrongfully accused of and been cleared of. And in fact, you know, we did actually have the police reports of that and everything else was confirmed. So it's not just a matter of Judge finding him candid. There's a significant amount of evidence here that he had it for one purpose and it wasn't for the other. Indeed, it wasn't until the Ricardo Sims murder that he actually bought a gun. I mean, that's a very strong inference that this is somebody who wasn't having it in connection. So your honor, we would just stand upon Fincher. This court, I think, clearly knows what Fincher holds and what it allows us to do. If you don't meet the guideline, it doesn't mean you can't meet the safety valve. And we would just ask for a remand for resentencing upon the proper standard before Judge Connolly. All right. Thank you very much. Our thanks to both counsel. We'll take you under advisement and that concludes our calendar for today.